SOL LUIS DESCARTES, en su carácter de TESORERO DE PUERTO RICO, peticionario, *v.* TRIBUNAL DE CONTRIBUCIONES, demandado; JUAN DÁVILA DÍAZ, interventor.

Número 287.

*Sometido:* 10 de diciembre de 1952. *Resuelto:* 29 de marzo de 1957.

*Hon. Procurador General Víctor Guitérrez Franqui* (en la petición de *certiorari*) y *J. B. Fernández Badillo, Procurador General Interino,* y *José A. García Malpica, Procurador General Auxiliar,* abogados del peticionario; *Brown, Newsom & Córdova,* abogados del interventor, querellante en el pleito principal.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del Tribunal.

El 3 de agosto de 1950 el Tesorero de Puerto Rico determinó una deficiencia de $3,789.27 en la contribución sobre ingresos del contribuyente Juan Dávila Díaz para el año contributivo 1942. El origen de dicha deficiencia fué el siguiente: el contribuyente declaró en su planilla de ingresos para el año 1942 la suma de $4,734 por concepto de beneficios en la sociedad "Quintero y Dávila, Limitada". El Tesorero rectificó dicha partida, aumentándola a $10,207.17. La diferencia entre esta suma y la declarada en la planilla representaba la participación del contribuyente en beneficios *no distribuídos* de "Quintero y Dávila, Limitada", durante el indicado año.

Al determinar la deficiencia, el Tesorero consideró que de acuerdo con nuestra decisión en *Tesorero v. Tribl. Contribuciones y Ballester,* 69 D.P.R. 750 y 70 D.P.R. 386, el contribuyente venía obligado a tributar sobre su participación en los beneficios no distribuídos de "Quintero y Dávila, Limitada", a la cual consideró como una *sociedad* comprendida en la sec. 2 (*a*) (3) de la Ley de Contribuciones sobre Ingresos

de 1924, según quedó enmendada por la Ley núm. 31 de 12 de abril de 1941, que es la ley aplicable al caso.

No conforme el contribuyente, acudió al anterior Tribunal de Contribuciones en impugnación de dicha deficiencia contributiva, sosteniendo que "Quintero y Dávila, Limitada", era, para el año contributivo 1942, y posteriormente—conforme a los términos del contrato de su creación—una *compañía limitada*, comprendida en la sec. 2(a) (2) de la ley, debiendo ser considerada por disposición expresa del estatuto, a los fines contributivos, como una *corporación;* y que, en consecuencia, no venía obligado a incluir en su declaración individual de ingresos, bajo las disposiciones de las secs. 4(a) y 15 de dicha Ley, los *beneficios no distribuídos* por la misma en dicho año.

· En su contestación a la querella, el Tesorero sostuvo —conforme a su determinación anterior—que "Quintero y Dávila, Limitada" era una *sociedad*, dentro del significado de dicho término bajo la referida Ley—sec. 2(a) (3)— y que, como tal, sus socios venían obligados al pago de la contribución de ingresos sobre los beneficios no distribuídos de la misma. En su alegato en el tribunal a quo sostuvo que aunque en su razón social usaba la palabra "limitada" dicha entidad era simplemente una sociedad *en comandita*, siendo nula una cláusula en el contrato de su creación que limitaba la responsabilidad de los socios a sus respectivas aportaciones al capital social.

El Tribunal de Contribuciones declaró con lugar la querella y a instancias del Tesorero expedimos el auto de *certiorari* para revisar la sentencia dictada. La cuestión a ser resuelta en este recurso es exactamente la misma que motivó la controversia entre las partes en el tribunal a quo: si "Quintero y Dávila, Limitada", constituye a los fines del estatuto contributivo, una *sociedad* o una *corporación*.

I

██ Anotemos, en primer lugar, las disposiciones de ley pertinentes.

870

La sec. 2 (a) (2) de la Ley de Contribuciones sobre Ingresos de 1924, según quedó enmendada por la Ley 31 de 12 de abril de 1941, en vigor desde el 1ro. de enero de 1940, dispone:

"(2) El término 'corporación' incluye las compañías limitadas, 'joint stock companies', sociedades anónimas, corporaciones privadas, compañías de seguros y cualesquiera otras asociaciones que derivan ingresos o beneficios tributables de acuerdo con esta Ley. Los términos 'asociación' y 'corporación' incluyen, además de otras entidades análogas, cualquiera organización creada con el propósito de llevar a cabo transacciones, o lograr determinados objetivos, las cuales, en forma similar a las corporaciones, pueden continuar existiendo a pesar de los cambios en sus miembros o en las personas que participan en ellas, y cuyos asuntos son dirigidos por un solo individuo, un comité, una junta o cualquier otra organización que actúe en una capacidad representativa. Los términos 'asociación', y 'corporación' incluyen las asociaciones voluntarias, y los 'Business Trusts', los 'Massachusetts Trusts', y los 'Common Law Trusts'."

La sec. 2 (a) (3) de dicha Ley, según quedó también enmendada por la citada Ley 31, provee:

"(3) El término 'sociedad' incluirá las sociedades civiles, mercantiles, industriales, agrícolas, profesionales o de cualquiera otra índole, conste o no, su constitución en escritura pública o documento privado e incluirá, además, cuando dos o más personas bajo un nombre común o no se dediquen a una empresa común (joint venture), con fines de lucro."

Y la sec. 4 (a), igualmente enmendada por la misma Ley 31, dispone: (¹)

"El término 'dividendo' cuando se usa en este título excepto cuando se usa en el párrafo 8 de la subdivisión (a) de la sección 32 y en el párrafo 3 de la subdivisión (a) de la sección 43, significará cualquier distribución hecha por una corporación a sus accionistas, bien sea en efectivo o en otra clase de propiedad, y procedente de sus beneficios o utilidades, acumulados después de febrero 28 de 1913 o de las ganancias, beneficios o utilidades

(¹) Dicha sección fué de nuevo enmendada por la Ley 424 de 13 de mayo de 1951, en cuanto a la significación del término "beneficios" limitando el mismo a "cualquier distribución hecha por una sociedad a sus socios y partícipes . . . . ." (Bastardillas nuestras.)

obtenidas en el año contributivo, computadas a la terminación del año contributivo sin que se verifique reducción alguna en virtud de cualquier distribución hecha durante el año contributivo, no importa cual fuese o haya sido el importe de beneficio, ganancias o utilidades al tiempo en que se haya hecho la distribución. Y el término 'beneficio' significará cualquier *participación o derecho a participación en una sociedad,* que en los 'beneficios' o utilidades de cualquier sociedad correspondiere a sus socios o partícipes en cada año contributivo". (Bastardillas nuestras.)

Conviene apuntar ahora que la Ley de Contribuciones sobre Ingresos de 1924, con anterioridad al 1ro de enero de 1940—fecha de efectividad de las enmiendas introducidas a las secs. 2 y 4 arriba transcritas por la citada Ley 31—incluía en el término "corporación", en su sec. 2(*a*) (2), las compañías limitadas, *"joint stock companies"*, sociedades anónimas, corporaciones privadas y compañías de seguros, *y no incluía* las *asociaciones,* que estaban comprendidas, según la sec. 2(*a*) (3) de la ley—antes de la referida enmienda—en el término "sociedad". La sec. 4(*a*), hasta el 31 de diciembre de 1939 en que fué enmendada por la Ley 31, no establecía diferencia entre los *dividendos* y utilidades de las corporaciones y los beneficios de las *sociedades,* en lo concerniente al momento en que debían tributar por ellos los accionistas y socios, respectivamente, en uno y otro caso. En ambos tributaban sólo después de distribuídos. (2) Sin embargo, desde el 1ro de enero de 1940, como resultado de los cambios hechos a la ley original por la Ley 31, surgieron consecuencias contributivas distintas para las personas con derecho a disfrutar de los beneficios de una sociedad. *Tesorero* v. *Tribl. Contribuciones y Ballester,* 69 D.P.R. 750; 70 D.P.R. 386. (3) El tér-

---

(2) El Reglamento de 17 de mayo de 1926 para la administración de la Ley de Contribuciones sobre Ingresos de 1924, contenía en su art. 90, una disposición al efecto de que "la participación a distribuir de las ganancias de un socio en una sociedad se considerará como recibido por él, aunque la misma no se haya distribuído." Esta disposición reglamentaria, sin embargo, fué anulada por este Tribunal en *Behn* v. *Domenech, Tesorero,* 49 D.P.R. 808.

(3) Según puede apreciarse de la definición del término *sociedad* de la

mino "beneficio" fué ampliado en la sec. 4(a) para significar, como hemos visto, "cualquier participación o derecho a participación en una sociedad, que en los 'beneficios' o utilidades de cualquier sociedad correspondiere a sus socios o partícipes en cada año contributivo."

Es propio señalar el hecho de que mientras con esa enmienda el legislador provocaba consecuencias contributivas distintas en cuanto a los beneficios no distribuídos de una sociedad, dejaba al mismo tiempo expresamente comprendidas en el término *corporación* a las *compañías limitadas*, entre otras, e incluía en él por primera vez *asociaciones* de toda índole, hasta entonces comprendidas en el término *sociedad*. Las enmiendas de la Ley núm. 31 no se aprobaron, pues, en un vacío. Las consecuencias contributivas surgidas para las personas con derecho a participar en los beneficios—sin distribuir—de una *sociedad* no se intentaron para las que tuvieran ese derecho en los beneficios y utilidades de las demás entidades y organizaciones señaladas expresamente en la sec. 2(a)(2) de la ley, o comprendidas en la acepción general de *asociaciones*, según esa misma sección.

## II

 Veamos, en segundo lugar, la estructura y funcionamiento de "Quintero y Dávila, Limitada", según el contrato social de su creación.

De la escritura núm. 33 otorgada el 16 de septiembre de 1937 ante el notario Gustavo Benítez Gautier, aparece que

---

sec. 2(a)(3)—que no tiene igual acepción que el término *partnership* del derecho común—el estatuto contributivo usa dicho término en forma convencional al igual que en la sec. 2(a)(2) usa el término *corporación* en la misma forma. Conforme a la sec. 2(a)(3) hemos considerado, en algunos casos—bajo variadas situaciones de hechos—que una comunidad de bienes constituye una *sociedad* para fines contributivos, *Tes.* v. *Tribl. Contribuciones* y *Comunidad Fajardo*, 70 D.P.R. 99; *Tes.* v. *Tribl. Contribuciones* y *Fraticelli*, 70 D.P.R. 475 (sociedad y *no* comunidad antes del 1ro de enero de 1940, pero empresa común—*joint venture*—con posterioridad); *Calaf* v. *Tribl. Contribuciones*, 73 D.P.R. 812; y, en otros, que no la constituye, *Puig* v. *Tribl. Contribuciones,* 65 D.P.R. 734; *Vías* v. *Tribl. Contribuciones,* 67 D.P.R. 491.

"Quintero y Dávila, Limitada" se constituyó originalmente, bajo tal razón social, por la escritura núm. 25 otorgada el 20 de mayo de 1929 ante el notario Salvador Suau, por un término de 9 años a vencer el 30 de junio de 1938, siendo sus miembros Concepción Díaz Vda. de Dávila, Juan Dávila Díaz y Arturo Quintero Menéndez. Habiendo fallecido este último, los miembros de su Sucesión, en unión a los anteriores miembros de "Quintero y Dávila, Limitada", constituyeron—por la citada escritura de 16 de septiembre de 1937—una nueva sociedad, como sucesora de la anterior, bajo la misma razón social de "Quintero y Dávila, Limitada", por un término de 8 años que comenzaría el 1ro de julio de 1938 y expiraría el 30 de junio de 1946. Su objeto fué el de dedicarse a explotaciones agrícolas en general, pudiendo con tal fin arrendar, comprar y vender toda clase de bienes muebles e inmuebles, celebrar con respecto a ellos toda clase de contratos, contraer toda clase de obligaciones, reales o personales, y practicar todas aquellas operaciones lícitas conducentes al objeto de su creación.

Se dispuso que el capital social, de conformidad con el carácter de la sociedad, sería limitado, fijándose éste en la suma de $75,000, que habría de ser adoptado por cada uno de sus miembros en la proporción convenida; pudiendo aumentarse dicho capital hasta la suma de $100,000, previo acuerdo de una mayoría adoptado en Junta General de Socios, hecho lo cual cada uno aportaría la parte que le correspondiera en la misma proporción de su aportación original. Cada uno se obligó a depositar en efectivo, dentro de los 30 días siguientes al 1ro de julio de 1938, el 75% de la suma que le correspondía aportar al capital social; y el 25% restante, o la parte que el propio Socio-Administrador determinara, a hacerla efectiva de tiempo en tiempo según lo necesitare la sociedad, a juicio de dicho Socio-Administrador.

La responsabilidad social quedó limitada "al montante del capital autorizado, y la de cada uno de los socios al montante

de la suma que aporta, más lo que más tarde pueda aportar y aporte según los términos de esta escritura."

Se designaron dos socios gestores con derecho a usar la firma social, designándose a uno de ellos—el aquí interventor—como Administrador General, otorgándosele no sólo poderes de administración, sí que también poderes plenos para comprar, vender y permutar bienes muebles e inmuebles, y para ejercitar, en general, todo acto de dominio en relación con los bienes, derechos y acciones de la sociedad, así como poderes de representación—como actor o demandado, o en cualquier otro concepto—en asuntos de toda índole en que ésta tuviere interés directo o indirecto.

La Junta General de Socios sólo podía constituirse válidamente cuando estuviere representado en ella por lo menos la mitad del capital social, debiendo tomarse los acuerdos por mayoría de votos, cada $1,000 representando un voto. El fallecimiento "de uno cualquiera de los asociados", no daría lugar a la disolución de la sociedad, sino que ésta continuaría hasta expirar el término por el cual se constituyó, aun cuando se convino que la sucesión del fallecido tendría derecho a la participación proporcional que en los beneficios correspondiera al capital de su causante, y que ésta, o su representante, podría tomar parte en las Juntas de Socios e intervenir en la administración social. Un socio podía ceder o vender, o en cualquier otra forma traspasar su capital o haber social a un extraño, sólo cuando no quisiera adquirirlo alguno de los demás.

Terminadas las operaciones de cada año se pasaría un balance general y de haber ganancias se separaría un 10% para reserva y el remanente se distribuiría en proporción a la suma aportada al capital social. De resultar alguna pérdida, cada uno sería responsable en igual proporción. La liquidación de la sociedad quedó a cargo del Socio-Administrador.

## III

La contención principal del Tesorero es que nuestro Código Civil y nuestro Código de Comercio no autorizan la constitución de una sociedad en que se limite la responsabilidad de *todos* los socios de la misma; que cualquier cláusula en el contrato social a ese efecto es nula, y que, en consecuencia, no pudiendo organizarse válidamente en Puerto Rico una sociedad con tal limitación de responsabilidad, no puede considerarse a "Quintero y Dávila, Limitada" como una de las *compañías limitadas* que la sec. 2 (*a*) (2) de la ley incluye en el término "corporación".(⁴) Según el Tesorero, dicha sec. 2 (*a*) (2) se contrae a señalar entidades, creadas en Puerto Rico o en el extranjero, que obteniendo por sus operaciones ingresos sujetos a contribución de acuerdo con la ley, serán tributados en igual forma que las corporaciones, no autorizando dicha sección la creación aquí de otras entidades jurídicas que no sean las comprendidas en las disposiciones del Código Civil o Código de Comercio. A su juicio—eliminadas de este último cuerpo legal las sociedades anónimas, según la Ley núm. 42 de 25 de abril de 1930—la única compañía con responsabilidad limitada que puede organizarse en Puerto Rico es la sociedad en comandita en la forma y alcance que dicho Código preceptúa.

En su alegato ante nos, el Tesorero sostiene que según el contrato social de su creación, "Quintero y Dávila, Limitada", *no es* una de las sociedades mercantiles (colectiva o en comandita) autorizadas por nuestro Código de Comercio; que por su objeto, la misma *es* una sociedad civil, y que siendo nula la cláusula limitando la responsabilidad de todos los socios —por no ser éste un atributo de dichas sociedades—tal cláusula no priva a dicha entidad de su condición de sociedad civil.

---

(⁴) Las *compañías limitadas* continúan comprendidas en el término "corporación" bajo la sec. 411 (*a*) (2) de la Ley de Contribuciones sobre Ingresos de 1954.

## IV

No es función del derecho contributivo establecer las normas legales determinantes de la existencia válida de las entidades que somete a tributación: ésa es función del derecho civil, mercantil o corporativo; pero el derecho contributivo sí reconoce, y clasifica conforme a sus propias normas—en la esfera práctica en que se desenvuelve—la existencia de esas entidades como criaturas contributivas.

Independientemente de los requisitos o limitaciones que el derecho civil o mercantil imponga para que de la asociación de dos o más personas surja la personalidad jurídica de una sociedad o compañía, el derecho contributivo—en su función de realidades—provee la solución necesaria, afrontando el problema con criterio objetivo: sea o no una entidad cuya existencia jurídica se ajuste a las formalidades del derecho civil o mercantil, el estatuto especial le asigna el descargue de su responsabilidad contributiva de conformidad con su propia clasificación. Es por eso que en el término *sociedad* la ley incluye todo tipo de sociedad, conste o no su constitución en escritura pública, y la llamada empresa común (*joint venture*) con fines de lucro; y que en el término *corporación* incluye, además de las corporaciones privadas propiamente dichas, otras entidades que específicamente nombra—entre éstas las *compañías limitadas.*

## V

Aunque no estamos aquí determinando la existencia legal —desde el punto de vista del derecho civil o mercantil—de una *compañía limitada*, examinemos, sin embargo, la contención del Tesorero de que bajo el estado actual de un derecho de sociedad regido, como el nuestro, por un Código Civil y un Código de Comercio, no cabe admitir, a los fines siquiera del estatuto contributivo, la existencia de una entidad local en que se limite la responsabilidad de todos sus socios.

En el derecho español, bajo un régimen de Código Civil y de Código de Comercio en su esencia igual al nuestro, se

ha admitido, tanto en las sociedades civiles como en las mercantiles, la validez de la convención limitando la responsabilidad de todos los socios a solo la aportación social, pues mientras no haya exención total de responsabilidad, ello está permitido por el art. 1691 del Código Civil—1582 del nuestro—(⁵) con la salvedad de que para que surta efectos contra tercero dicha limitación, habrá de hacérsele conocer de modo bastante. 25 Scaevola, Código Civil, Vol. II, 144-145; 25 Scaevola, Código Civil, Primera Parte, 418; De Buen, Sociedad, en 28 Enciclopedia Jurídica Española, 871.(⁶)

Se ha admitido igualmente en el derecho español, como una de las formas excepcionales no comprendidas en las tres autorizadas por el art. 122 de su Código de Comercio—art. 101 del nuestro que sólo incluye la regular colectiva y la comanditaria—la existencia de Sociedades de Responsabilidad Limitada, en las cuales la característica esencial es la limitación de responsabilidad de *todos* sus socios a su aportación al capital social—que está dividido en *participaciones* y no

---

(⁵) Artículo 1582 de nuestro Código Civil:

"Es nulo el pacto que excluye a uno o más socios de toda parte en las ganancias o en las pérdidas. Sólo el socio de industria puede ser eximido de toda responsabilidad en las pérdidas."

(⁶) Citando de Ponsá y Gil, "Sociedades civiles, mercantiles, cooperativas y de seguros", t. I (1911) pág. 147, Demófilo de Buen, en su colaboración de la Enciclopedia Jurídica Española, t. 28, pág. 871, expresa así igual criterio sobre la validez de la convención limitando la responsabilidad de todos los socios en una sociedad civil ordinaria: "Ponsá y Gil cree, como nosotros, que los asociados tienen libertad para limitar su responsabilidad por tenerla para toda clase de estipulaciones sobre pérdidas y ganancias, salvo la prohibición consignada en el art. 1691. Dicha limitación, para que surta efectos contra tercero, habrá de hacérsele conocer cuando con él se contrate; conocida la limitación por el acreedor—añade—no podrá perseguir los bienes particulares del asociado, y siguiendo el principio general de no ser solidarias las obligaciones de los deudores, no podrá cargar sobre los otros socios la parte que en la deuda correspondiera al que limitadamente se obligó a formar parte de la sociedad."

Gay de Montellá reconoce, bajo el mismo principio, que "aunque es de esencia en el contrato de sociedad la contribución en las pérdidas, esta participación puede ser limitada por el pacto, puesto que una limitación *no representa nunca una liberación de responsabilidades*." 2 Gay de Montellá, Código de Comercio, 23.

en acciones—sin que afecte esa limitación el uso de sus nombres en la razón social. (⁷)

## VI

No podemos convenir con el Tesorero en que cuando la ley, en su sec. 2 (a) (2), incluye en el concepto *corporación* las sociedades limitadas (*limited partnerships*), se está refiriendo a entidades que, organizadas de ese modo en su estado o país de origen, vienen a realizar negocios en Puerto Rico. Las sociedades limitadas (*limited partnerships*) del derecho americano, (⁸) participen o no de la misma estructura fundamental que las compañías en comandita reconocidas por nues-

---

(⁷) Este tipo de sociedad se asimila al régimen de sociedades *personalistas*—a distinción de las de capital—en las que se injerta el principio de limitación de responsabilidad de todos los socios. Sentencias del Tribunal Supremo de España de 17 de noviembre de 1928, 5 de julio de 1941 y 18 de febrero de 1948. Véase Juan Ríos Sarmiento, Compañía Mercantil, en 1 Diccionario de Derecho Privado, 1003 et seq.

Véase, además, en estudio comparado sobre el origen y desarrollo histórico de las Sociedades de Responsabilidad Limitada, 1 Garrigues, Tratado de Derecho Mercantil, 1139 et seq.; 3 Benito, Derecho Mercantil (1929), 349 et seq.; 2 Gay de Montellá, ob. cit. 87 et seq.; Wieland, "La Sociedad de Responsabilidad Limitada" en 19 Revista de Derecho Privado 241 et seq.; Pérez Serrano, "La Proyectada Reforma del Código de Comercio", en 14 Revista de Derecho Privado, 3 et seq. y Nota del Profesor Ricardo Gullón en 25 Revista Jurídica de la Universidad de P. R. sobre el libro de Gay de Montellá "La Sociedad de Responsabilidad Limitada" (1954) bajo la nueva ley de 17 de julio de 1953, relativa a este tipo de sociedad.

(⁸) Aun cuando en el derecho norteamericano la compañía limitada (*limited partnership*) se identificó originalmente con la sociedad en comandita del Código de Comercio francés, pasando del territorio de Lousiana al Estado de Nueva York, y de éste a otros estados—véanse los comentarios de Felipe de Sola Cañizares "La 'Partnership' y la 'Limited Partnership' en Inglaterra y en los Estados Unidos", en 3 Cuadernos de Derecho Angloamericano, págs. 81, 92, y "Sociedades en el Derecho Angloamericano" en el núm. 4, ob. cit., págs. 51, 67, Gay de Montellá, ob. y t. cit., pág. 85—siendo su característica principal, consecuente con su origen, el de la responsabilidad de algunos, pero no de todos, los socios (como ocurre con la Ley Uniforme de Compañías Limitadas, 8 U.L.A., Limited Partnership) en los estados de Pennsylvania, Michigan, Ohio, Virginia y Nueva Jersey, se autorizó la creación de compañías con limitación de responsabilidad de todos los socios. Eder, *Limited Liability Firms Abroad*, 13 U. of Pitts. L. Rev. 193, 212–213; Warren, *Corporate Advantages without Incorporation*, 302 et seq., 511 et seq.

tro Código de Comercio, estarían incluídas, por disposición expresa del estatuto, en el término "corporación" de la sec. 2 (a) (2) de la ley, mientras que las organizadas en Puerto Rico estarían incluídas en el término "sociedad" de la sec. 2 (a) (3). No se daría un trato igual, desde el punto de vista contributivo, a organizaciones o entidades de la misma naturaleza, si se consideraran las formadas aquí como *sociedades* y las formadas de la misma manera, pero no bajo la ley local, como *corporaciones*.

## VII

Al incluir las *compañías limitadas* en el término "corporación", nuestro derecho contributivo no hizo otra cosa que reconocer aquella convención que en el contrato social pudiera limitar la responsabilidad de todos los socios a sus respectivas aportaciones—lo cual no prohibe el art. 1582 del Código Civil—sin que con ello le esté dando a tales entidades personalidad jurídica propia, pues una cosa es el reconocimiento de lo pactado y otra el atribuir a la sociedad frente a terceros, los caracteres propios de una persona jurídica.

## VIII

En virtud de lo anterior, resolvemos que "Quintero y Dávila, Limitada", era para el año contributivo aquí en litigio, conforme a su contrato social, una *compañía limitada* dentro del significado de la sec. 2 (a) (2) de la Ley de Contribuciones sobre Ingresos y, en consecuencia, que estaba incluída, para fines contributivos, en la definición del término "corporación" de dicha ley, no viniendo obligado el contribuyente Juan Dávila Díaz a incluir en su planilla individual de ingresos, correspondiente a dicho período, los beneficios no distribuídos de dicha entidad en el referido año.

*La sentencia será confirmada.*
El Juez Asociado Sr. Sifre no intervino.