HORACIO DAUBÓN BELAVAL y OTROS, demandantes y recurridos, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrente.

Número: R-77-114 Resuelto: 17 de octubre de 1977

*Héctor A. Colón Cruz, Procurador General, Justo Gorbea Varona, Procurador General Interino* y *Reina Colón de Rodríguez, Procuradora General Auxiliar,* abogados del recurrente; *Elpidio Arcaya,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

La presente controversia permite el examen de las normas y criterios legales pertinentes para distinguir una "sociedad" [1] de una "comunidad de bienes" [2] en materia de derecho contributivo, área en la cual—debido a la fluidez de

---

[1] "Sociedad—El término . . . incluirá además a dos o más personas que se dediquen, bajo nombre común o no, a una empresa común con fines de lucro." (13 L.P.R.A. sec. 3411(a)(3).)

[2] "Está bien establecido que la mera comunidad de bienes no constituye una empresa común para fines de lucro. . . . Para que la constituya es preciso que sin formarse una verdadera sociedad, los dueños de los condominios los aporten para dedicarse, con fines de lucro, a una determinada operación; que participen todos en las pérdidas y ganancias; que haya entre ellos la relación fiduciaria que existe entre los socios, de suerte que cada uno sea mandatario de los demás en lo que respecta a cualquier gestión comprendida dentro del ámbito de la empresa común, teniendo así cada uno voz y voto en su administración, si bien pueden convenir que uno o más de ellos asuman la gestión del negocio en representación de los demás tal y como sucede con las sociedades." *Puig* v. *Tribunal de Contribuciones,* 65 D.P.R. 734, 739 (1946).

situaciones y variantes fácticas—resulta difícil pautar y manifestar sistemática y consistentemente el pensamiento jurídico correspondiente dimanante de nuestra doctrina jurisprudencial que fija la línea divisoria entre ambas instituciones. Expongamos los hechos.

Durante el año 1971, los hermanos Daubón Belaval radicaron varias demandas contra el Secretario de Hacienda impugnando su negativa a reintegrar el monto de contribuciones pagadas desde el 1961 a 1969, ambas inclusives, y la caracterización de su relación como una sociedad para efectos contributivos. Consolidadas las acciones, el tribunal de instancia recibió prueba sobre la relación fiduciaria entre los hermanos, así como la siguiente estipulación:

"Horacio, Druso y Vasco Daubón Belaval, Ramón Daubón Morales y Esther Belaval Vda. de Daubón heredaron varias propiedades de Ramón L. Daubón Cabrera, fenecido el 10 de diciembre de 1948.

Constituída la Sucesión de Ramón L. Daubón Cabrera, los herederos vendieron dos de las propiedades que habían heredado, al Sr. Francisco Rahola, por precio de $85,000 y procedieron a distribuirse el importe de la venta, en la siguiente forma:

| | | |
|---|---|---|
| a. | Esther Belaval Vda. de Daubón | $36,776.23 |
| b. | Horacio, Druso y Vasco Daubón Belaval | $31,567.47 |
| c. | Ramón Daubón Morales | $16,656.30 |

Con el monto de sus participaciones (31,567.47) en las dos propiedades vendidas, más con el importe de dos préstamos tomados, Horacio, Druso y Vasco Daubón Belaval construyeron un edificio de hormigón armado, de tres plantas, en la Avenida Ponce de León Núm. 1510. Uno de los préstamos, por la suma de $65,000, se tomó al Banco Popular de Puerto Rico, a pagarse solidaria y mancomunadamente por los tres hermanos en plazos de $634.00 mensuales. El otro préstamo, por la suma de $85,000, se tomó a Esther Belaval Vda. de Daubón. El edificio construído ubica en un solar de 963.45 m/c que les había sido donado por su señora madre en 1948.

Durante el año 1960 los hermanos Horacio, Druso y Vasco Daubón Belaval levantaron tres plantas adicionales sobre el edificio que habían construído. El dinero para esta segunda cons-

trucción provino de la venta de otra de las propiedades por ellos heredadas y de otro préstamo que tomaron al Banco Popular de Puerto Rico.

Con posterioridad a la muerte del causante Ramón L. Daubón Cabrera, los hermanos Horacio, Druso y Vasco Daubón Belaval radicaron sus respectivas planillas individuales de ingresos, informando en ellas sus ingresos provenientes, entre otras fuentes, de sus participaciones en las rentas del edificio que poseían en comunidad.

En septiembre de 1962 recibieron de la Secretaría de Hacienda notificación preliminar de deficiencia, dirigida ésta a la razón social 'Hermanos Daubón Belaval', imputándole a la sociedad 'Hermanos Daubón Belaval' deficiencias para los años 1952, 1953, 1957, 1958 y 1960 por un monto ascendente a $33,848.43. Inconformes con las notificaciones de deficiencias, solicitaron reconsideración y vista administrativa. La vista administrativa se celebró y como resultado de ella se sostuvo por el Negociado de Contribuciones sobre Ingresos la existencia de la sociedad. El monto de las deficiencias se redujo, como consecuencia de la vista, a $29,602.54.

Las deficiencias para los años anteriores, a saber, 1952, 1953, 1957, 1958 y 1960, se litigaron ante este mismo Tribunal Superior de Puerto Rico, Sala de San Juan, bajo el Número Civil 63-1668. En 6 de marzo de 1964, este Tribunal, siendo Juez el Hon. Angel M. Umpierre, declaró sin lugar la demanda radicada por los Hermanos Daubón Belaval. Contra dicho fallo se radicó recurso de revisión ante el Honorable Tribunal Supremo de Puerto Rico (Horacio Daubón Belaval y otros v. Secretario de Hacienda, R-64-212). El 17 de febrero de 1965 el Tribunal Supremo denegó la expedición del auto de revisión de los demandantes, quedando así confirmada la decisión del Tribunal Superior, Sala de San Juan, en el caso Civil Núm. 63-1668.

## DESPUES DE LAS DEFICIENCIAS

Litigadas y resueltas adversamente las deficiencias de los años 1952 al 1960, los contribuyentes, acatando el dictamen, prepararon y radicaron las planillas posteriores de 1961 en adelante, como sociedad.

No obstante ello, dentro del período estatutario de su pago— 15 de abril de 1966—los hermanos Daubón Belaval solicitaron

formalmente el reintegro de las contribuciones pagadas para los años 1961 al 1965, ambos inclusives.

A tales solicitudes de reintegro, el Negociado de Contribuciones sobre Ingresos, en 7 de noviembre de 1968, escribió una carta que en lo esencial lee así:

'Con referencia a sus reclamaciones de reintegro arriba indicadas, radicadas en 15 de abril de 1966, se le informa que no se tomará acción en relación con las mismas hasta tanto se resuelva el caso de las deficiencias de los años 1964 y 1965 que le estamos notificando separadamente.'

Entendían entonces y entienden hoy los hermanos Druso, Horacio y Vasco Daubón Belaval, que ellos no constituían, ni constituyen actualmente una sociedad y sí una comunidad, no ya tanto en cuanto a los años contributivos litigados y finiquitados, sino con respecto a los años desde 1961 en adelante y hasta el 1969, inclusive. Las razones que los hermanos Daubón Belaval aducen para así entender, son las siguientes:

(a) Los contratos de arrendamiento de sus propiedades exigen y requieren el consentimiento, intervención y las firmas de todos y cada uno de los tres hermanos.

(b) Toda cuenta bancaria corriente exige el registro de las firmas de todos y cada uno de los tres hermanos, requiriéndose dos firmas, cuando menos para girar.

(c) Nadie podrá tomar, ni gestionar préstamo, bancario o de otra índole, sin autorización, concurrencia ni aprobación individual e independiente de los tres hermanos Horacio, Druso y Vasco Daubón Belaval.

(d) Ninguno de los hermanos individualmente podrá en manera alguna subrogarse, expresa ni implícitamente, una relación fiduciaria a nombre de los demás hermanos.

(e) Desde 1961 en adelante los tres hermanos, individualmente llevan su propia contabilidad, bajo la dirección y supervisión de un Contador Público Autorizado.

De la otra parte, el Secretario de Hacienda alega que la demandante ha venido operando durante los años en controversia como una sociedad y no como una comunidad; al efecto, el demandado alega:

(a) Que para facilitar la administración de la construcción de su negocio y más tarde el control de ingresos de rentas y desembolsos de gastos de dicho negocio, se abrió una cuenta corriente en el Banco Popular a nombre de la razón social Her-

manos Daubón Belaval, conviniendo que la acción de dos de ellos responsabilizaba a los tres, bien al depositar o al girar contra esa cuenta;

(b) que todos los gastos relacionados con el edificio eran pagados de las rentas percibidas;

(c) que las rentas netas eran depositadas en partes iguales para cada uno de los tres hermanos, siendo este hecho así desde el 1952 hasta el presente;

(d) que en el caso Núm. 63-1668—Hermanos Daubón Belaval—años 1952 al 1960, resuelto el 6 de marzo de 1964, el Tribunal determinó probado lo siguiente:

'Los demandantes adquirieron el solar por donación de su señora madre, construyeron el edificio y perciben rentas cuyos pagos se efectúan a nombre de Hermanos Daubón Belaval, tienen una cuenta de banco común, un interés común en las ganancias, operan con fines de lucro, responsabilidad común en las deudas y pérdidas, responsabilidad común en la dirección y administración de los negocios, contribución común para la adquisición o construcción del edificio que produce rentas, trabajo común de los socios.'

Mientras se encontraban pendientes de resolverse administrativamente las reclamaciones de reintegro radicadas por los Hermanos Daubón Belaval, el 16 de febrero de 1968, el Honorable Tribunal Supremo de Puerto Rico decidió el caso de *Comunidad de José Fernández* vs. *Secretario de Hacienda,* 95 D.P.R. 728 (1968). Los demandantes alegan que este caso es de aplicación al problema que nos confrontamos. El Secretario de Hacienda aduce el hecho de que se ha establecido una diferencia considerable entre este caso y el *Comunidad de José Fernández,* 95 D.P.R. 728 . . . ."

A la luz de tales hechos, la ilustrada sala sentenciadora concluyó que la sentencia dictada en el caso 63-1668, cubriendo los años contributivos desde el 1952 al 1960, no constituía impedimento colateral para la adjudicación de aquellos años posteriores ante su consideración y, sostuvo además, que no había una relación fiduciaria entre los hermanos, y por ende, existía una comunidad de bienes y no una sociedad según lo resuelto en el caso de *Com. J. Fernández* v. *Srio. de Hacienda,* 95 D.P.R. 728 (1968).

A solicitud del Secretario de Hacienda acordamos revisar.

## I

El primer error impugna la negativa del tribunal de instancia en aplicar la doctrina de cosa juzgada a los años contributivos de 1961 a 1965 y de 1966 a 1967.

Tiene razón. Reiteradamente hemos reconocido que la defensa de Cosa Juzgada puede ser invocada exitosamente en pleitos contributivos—*Capó Sánchez* v. *Srio. de Hacienda*, 90 D.P.R. 149 (1954); *Pereira* v. *Hernández*, 83 D.P.R. 160, 166 (1961) y *Tesorero* v. *Tribunal de Contribuciones*, 72 D.P.R. 617, 622 (1951)—en su modalidad denominada Impedimento Colateral por Sentencia (*Collateral Estoppel by Judgment*) cuando el litigante intenta relitigar el hecho o asunto previamente dictaminado en una acción judicial entre las mismas partes, bajo el fundamento de que se trata de una causa de acción diferente a la ejercitada en el pleito original.

La sentencia dictada en el primer pleito el 6 de marzo de 1964 (Civil Núm. 63-1668), en lo pertinente consignó:

"Los demandantes adquirieron el solar por *donación* de su señora madre, construyeron el edificio, y perciben rentas cuyos pagos se efectúan a nombre de Hermanos Daubón Belaval, tienen una cuenta de Banco común, un interés común en las ganancias, operan con fines de lucro, responsabilidad común en las deudas y pérdidas, responsabilidad común en la dirección y administración de los negocios, contribución común para la adquisición o construcción del edificio que produce rentas, trabajo común de los socios, *Suárez* v. *Descartes*, 85 D.P.R.; *Rodríguez Viera* vs. *Secretario de Hacienda*—Revisión 343 de diciembre 31, 1963 . . . .

. . . . . . . .

A los efectos de las rentas que produce el edificio en la Avenida Ponce de León #1510 los demandantes constituyen una sociedad o empresa común (joint venture) para fines contributivos."

Y advino final y firme al negarse este Tribunal a expedir

un auto de revisión. A tono con la misma el Secretario continuó dándole tratamiento de sociedad a los recurridos hermanos Daubón Belaval en lo concerniente a los ingresos provenientes del negocio de rentas producidas por el edificio. A partir del año 1961 en adelante, los hermanos Daubón Belaval radicaron planillas como sociedad en lo referente a dicho negocio. Es en el año 1966 que solicitan del Secretario el reintegro de las contribuciones pagadas por los años 1961 al 1965, ambos inclusive.

En 16 de febrero de 1968 este foro resuelve el caso de *Comunidad J. Fernández* v. *Secretario de Hacienda*, y en el año 1971 los recurridos radican las restantes acciones que nos ocupan.

Aun cuando reconocemos que en el Caso Civil Núm. 63-1668, la causa de acción era en "cobro" de contribuciones, y la de autos una de "reintegro" de contribuciones, resalta a la vista de que se trata de relitigar la misma acción so color de otra distinta, por lo cual es aplicable la doctrina del Impedimento Colateral por Sentencia. (³)

La tesis de la Sala de instancia determinando que la doctrina de impedimento colateral por sentencia no es de aplicación a litigios contributivos que envuelven años diferentes cuando el principio legal aplicable ha variado—en virtud de una enmienda a la ley o por decisiones judiciales—si bien encuentra apoyo en *Commissioner of Internal Revenue* v. *Sunnen*, 333 U.S. 591 (1948), no obstante, pasa por alto que una variación en el derecho vigente tendrá, como regla general, validez y efectos prospectivos. *Sunnen*, supra, 598–599. En consecuencia resolvemos que la doctrina de impedimento colateral por sentencia resulta de estricta aplicación y debe prosperar respecto a las impugnaciones relacionadas con los

---

(³) En adición a nuestra jurisprudencia citada, véanse: *Blackmon & Assoc., Inc.* v. *United States*, 409 F.Supp. 1264, 1265 (1976); *Adolph Coors Co.* v. *C.I.R.*, 519 F.2d 1280, 1283 (1975); *Jones* v. *United States*, 466 F.2d 131, 134 (1972).

años 1961 al 1967. Resta analizar en el próximo señalamiento, la corrección de la sentencia a los fines de los años contributivos 1968 al 1969.

## II

El segundo error cuestiona la determinación de que la relación entre los demandantes-recurridos, en lo que respecta al negocio de rentas que explotan con fines de lucro en el edificio ubicado en la Avenida Ponce de León #1510, no es una sociedad o empresa común (*joint venture*) para fines contributivos.

■ El marco conceptual que rige este tipo de controversia no se determina a base de que haya una absoluta correspondencia de la entidad en cuestión con los requisitos dispuestos en el Código Civil, o en los campos del Derecho Mercantil o Corporativo, aun cuando sus preceptos son auxiliadores en el esclarecimiento de la relación existente. El principio fue expuesto en *Descartes, Tes.* v. *Tribl. de Contribuciones*, 79 D.P.R. 866, 876 (1957).

"No es función del derecho contributivo establecer las normas legales determinantes de la existencia válida de las entidades que somete a tributación; ésa es función del derecho civil, mercantil o corporativo; pero el derecho contributivo sí reconoce, y clasifica conforme a sus propias normas—en la esfera práctica en que se desenvuelve—la existencia de esas entidades como criaturas contributivas.

Independientemente de los requisitos o limitaciones que el derecho civil o mercantil imponga para que de la asociación de dos o más personas surja la personalidad jurídica de una sociedad o compañía, el derecho contributivo—en su función de realidades—provee la solución necesaria, afrontando el problema con criterio objetivo: sea o no una entidad cuya existencia jurídica se ajuste a las formalidades del derecho civil o mercantil, el estatuto especial le asigna el descargue de su responsabilidad contributiva de conformidad con su propia clasificación. Es por eso que en el término sociedad la ley incluye todo tipo de sociedad, conste o no su constitución en escritura pública, y la llamada empresa común (*joint venture*) con fines de lucro; y que en el

término corporación incluye, además de las corporaciones privadas propiamente dichas, otras entidades que específicamente nombra—entre éstas las compañías limitadas."

Subsiguientemente, en *Suárez Fuentes* v. *Srio. de Hacienda*, 85 D.P.R. 388 (1962), hicimos un recuento desde *Vías* v. *Trib. de Contribuciones*, 67 D.P.R. 491 (1947) e indicamos:

"Sin que ninguna de las normas aquí formuladas pueda considerarse como esencial al establecimiento de una sociedad, en Derecho contributivo estricto, las siguientes pueden considerarse como indicativas de la existencia de tal sociedad: (1) *interés común en la ganancia;* (2) *responsabilidad común en las deudas y en las pérdidas,* aunque un acuerdo expreso para no compartir la pérdida no es esencial a la constitución de la sociedad; (3) *responsabilidad común en la dirección de los negocios de la sociedad,* pero está bien reconocida la excepción que una sociedad puede existir aunque la dirección de la misma esté confiada en mayor proporción a un solo socio; (4) *contribución común para la adquisición de la propiedad social,* pero esta indicación tiene escaso valor, pues se considera que puede constituirse una sociedad aunque uno solo de los socios sea el dueño de la propiedad y el capital social consista meramente en el derecho del otro socio de usar la propiedad del primero, como es el caso de los socios industriales en Puerto Rico; (5) *el trabajo común de los socios,* aunque se admite la posibilidad del socio que no trabaje (*inactive partner*), como es el caso de los socios comanditarios en Puerto Rico; (6) *que no exista prohibición de enajenar o traspasar cualquier propiedad o interés de la sociedad, aunque la inclusión de tal restricción no debe considerarse como que equivalga a negar la existencia de la sociedad.*

Se considera como prueba pertinente a la constitución de la sociedad, la forma de contabilizar sus operaciones de negocio aunque no se considere prueba concluyente; la forma de presentarse (*representation*) ante el público; la forma como se ha informado a los agentes del gobierno los negocios de la sociedad; a nombre de quién se realizan las compras y cómo se ha conseguido crédito en la plaza; el nombre utilizado para otorgar contratos y asumir obligaciones; a nombre de quién se ha abierto una cuenta bancaria; a nombre de quién se han presentado las

acciones judiciales o reclamaciones ante los organismos del Estado; la existencia de contratos sociales. *En cuanto a este último medio de prueba, aunque en los contratos se diga que las partes no han tenido la intención de constituir una empresa común o una sociedad, si los acuerdos y las motivaciones de las partes, así lo demuestran, se considerará que tal empresa común o sociedad quedó establecida a los fines contributivos correspondientes:* 6 Mertens—*The Law of Federal Income Taxation* 111 et seq., Secciones 35.03 y 35.04.

En el suplemento correspondiente al año 1956 de la obra antes citada, se recoge el caso de *Tate* v. *Knox,* 131 F.Supp. 514, (Donovan), (1955), cita precisa a la pág. 517, en el cual se resuelve que *existe una empresa común tan pronto se prueban los siguientes hechos:* (a) *aportación (contribution) de dinero, propiedad, tiempo o destreza en un empeño común (common undertaking);* (b) *un interés propietario conjunto y un manejo mutuo del negocio;* (c) *participación en las ganancias,* aparte de cualquier retribución recibida en concepto de sueldo, y aunque no haya participación en las pérdidas; (d) *un contrato expreso o implícito que demuestre, como cuestión de hecho, el establecimiento de una empresa común."* 401–402 (Bastardillas nuestras.)

■ Y más reciente, en *Com. J. Fernández,* supra, destacamos que ninguno de los factores enumerados era determinante, dejando entrever que el cúmulo de los mismos constituía la clave esencial para distinguir la simple comunidad de bienes de una sociedad. A tal efecto, por vía de recapitulación expusimos:

". . . de acuerdo con *Puig, Vías, Appleby* y *Powell,* ni la procedencia de los fondos utilizados en la construcción de la edificación, ni el hecho de que tengan un apoderado, así como que mantengan una cuenta bancaria común, en modo alguno *es determinante* para resolver si la relación entre dos o más personas es social o de mera comunidad de bienes. Tampoco lo es el que disfruten de los solares en usufructo. La Ley Núm. 53 de 1928 en su Art. 70 autorizaba a conceder el usufructo a perpetuidad al concesionario y a sus sucesores en título. Ver *Jiménez* v. *Alvarez,* 69 D.P.R. 323–330 (1948)." 737. (Bastardillas nuestras.)

█ A las normas consignadas preciso es abonar que el paralelismo existente entre una comunidad de bienes y una sociedad, y la dificultad que entraña su diferenciación ha sido enfocado por los autores españoles en el campo civil en atención a los siguientes factores: (1) naturaleza jurídica, (2) distinto fundamento y (3) fin u objeto. Sobre su naturaleza, Manresa advierte que "la comunidad es un estado de hecho o de derecho del que nacen derechos y obligaciones previamente establecidos y reglamentados como sucede cuando varios herederos o legatarios poseen proindiviso la herencia o el legado común, o cuando varios propietarios son dueños de una misma cosa indivisa; y por el contrario, la sociedad es el producto de la convención, y los derechos y obligaciones propios de ella no están preconcebidos ni regulados con anterioridad por la ley, sino que tienen su origen en la voluntad de las partes contratantes." II Manresa, *Comentarios*, 375 (6ta. Ed.). Por su fundamento, ya que la sociedad es el resultado de la libre voluntad de sus socios; y por su finalidad, pues su objeto es "obtener lucro, mientras que el de la indivisión es sólo mantener en su integridad la cosa común y favorecer su conservación; o, lo que viene a ser igual, que la comunidad constituye un estado *pasivo*, ajeno a toda acción concertada y que se mantiene por inercia, mientras que la sociedad constituye un estado *activo*, basado en la voluntad de aunar esfuerzos para obtener un lucro partible." Scaevola, *Código Civil*, Tomo 25, 514 (Ed. 1933). Dicho autor reproduce la opinión de Carnelutti en el sentido de que "[a]mbas especies se diferencian por la presencia o por la ausencia de la *finalidad de ganancia*, la cual modifica el contenido del derecho del comunero. El patrimonio de la comunidad (*stricto sensu*) es un patrimonio en conservación; el patrimonio de la sociedad es un patrimonio en *transformación*. Por esto el comunero tiene derecho a la cuota de las *cosas comunes*, es decir, *de aquello que ha puesto en común;* el socio tiene derecho a la cuota *de la ganancia*, es decir, de *aquello en que se ha conver-*

*tido lo que se puso en común por efecto del empleo social . . . .*
La comunidad es una sociedad *en reposo;* la sociedad es una
comunidad *en movimiento." Op. cit.,* 514–515. Consúltese ade-
más: Castán, *Derecho Civil Español, Común y Foral,* Tomo
II, Vol. I, 329 (10a Ed.); Diego Espín, *Manual de Derecho
Civil Español,* Vol. III, 587 (4ta. Ed.).

 Aplicadas al caso de autos las normas reseñadas,
estimamos que el negocio de rentas de los recurridos Herma-
nos Daubón Belaval es una empresa común al amparo de la
Ley de Contribuciones sobre Ingresos pues concurren acu-
mulativamente, tanto cualitativa como cuantitativamente, los
siguientes factores demostrativos de una acción concertada
activa fundada en la unión expresa de voluntades y esfuerzos
cuya finalidad básica es el incremento y lucro de un patrimo-
nio social o común: (a) Contribución o aportación de dinero,
propiedad y tiempo en una causa común. De los cuatro her-
manos que formaban originalmente la sucesión, tres deciden
realizar la gestión mutua de construir un edificio para dedi-
carlo al negocio lucrativo de alquiler, haciendo una aporta-
ción común en dinero, suplementado por unas sumas adi-
cionales, mediante obligaciones a satisfacer mancomunada y
solidariamente; (b) Desarrollo de un interés propietario
combinado y un manejo mutuo del negocio evidenciado a
través del otorgamiento de contratos y el recibir las rentas
a nombre de su razón social (Hermanos Daubón Belaval).
Con dicho nombre mantienen una cuenta bancaria que via-
biliza el financiamiento ulterior de la ampliación del edi-
ficio; (c) Distribución de las ganancias. Ello lógicamente
implica que los Hermanos Daubón Belaval se distribuyen
entre sí no sólo los beneficios, sino cualesquiera pérdidas que
hubiere; (d) Existencia de un contrato implícito que de hecho
refleja el establecimiento de una empresa común; (4) (e)

_____

(4) Con acierto, el Secretario nos señala que "en este caso la gestión de
los demandantes-recurridos no se limita como en el de *Vírs* v. *Tribunal de
Contribuciones,* supra, el de *Puig* v. *Tribunal de Contribuciones,* 65 D.P.R.

Relación fiduciaria entre los hermanos Daubón Belaval. Es menester aclarar que el criterio doctrinario que caracteriza la sociedad como un convenio de confianza "se contrae *intuitu personae*".([5]) Ello significa una prohibición de los asociados a ingresar un tercero a la entidad sin el consentimiento unánime de los socios—Art. 1587, Código Civil (31 L.P.R.A. sec. 4358)—pues la base de la sociedad es la confianza mutua de las personas que la componen empeñadas en el éxito de la empresa.([6]) La relación fiduciaria no queda desvirtuada, como lo entendió la sala sentenciadora, por el solo hecho de que los hermanos Daubón Belaval fijaran reglas internas respecto a poderes individuales o combinados. El que ninguno fuera mandatario de los demás no tiene el alcance atribuídole, pues precisamente el propio Código Civil faculta la designación de uno o varios apoderados sin que se desnaturalice la

---

734 (1946) y el de *Comunidad J. Fernández* v. *Secretario de Hacienda*, supra, a percibir los beneficios correspondientes a sus respectivas aportaciones, sino que todos tienen voz y voto en la administración de los bienes de la comunidad. Pero hay más; desde el mismo instante de haber los demandantes-recurridos acordado fabricar, se evidenció la intención de llevar a cabo una empresa común con fines de lucro. Al efecto, tomaron grandes cantidades a préstamo para la razón social *Hermanos Daubón Belaval*, se obligaron mancomunada y solidariamente en el pago de los préstamos recibidos, abrieron cuenta en el Banco Popular de Puerto Rico a nombre de la razón social, y cualquiera de los demandantes podía girar contra esa cuenta, siendo suficiente sólo dos firmas. Vemos establecida así una relación fiduciaria entre todos. Dicha empresa nunca cesó sus funciones, y con posterioridad al año 1960, construyeron tres plantas adicionales sobre el edificio bajo los convenios verbales de los demandantes; y los contratos de arrendamiento se hacían a nombre de los Hermanos Daubón Belaval. En fin, vemos claramente que el propósito fundamental de los Hermanos Daubón Belaval al dedicarse al referido negocio es el de obtener ganancias pecuniarias a través de una empresa común."

([5]) Puig Brutau, *Fundamentos de Derecho Civil*, Tomo II, Vol. II, 405 (1956).

([6]) Cabe anotar que la limitación convenida por los recurridos, en el sentido de que los contratos de arrendamiento "exigen y requieren el consentimiento, intervención y las firmas de todos", es un indicio claro demostrativo de una sociedad, en contraposición a una comunidad de bienes en que los condueños están en libertad de enajenar sus derechos a terceros, sin más limitaciones que las que dispone la institución de retracto.

esencia de la sociedad.(⁷) Arts. 1583 a 1587 (31 L.P.R.A. secs. 4354 a 4358).

Finalmente, con respecto a los años contributivos en controversia 1968–69, no se nos escapa el hecho real de que han transcurrido dos décadas del fallecimiento del causante Daubón. El transcurso del tiempo es un elemento a considerar en unión a los factores previamente apuntados. La suma total de los mismos señala indefectiblemente como única conclusión jurídica la existencia de la Sociedad Hermanos Daubón Belaval para fines contributivos. El caso de autos es claramente distinguible del de *Com. J. Fernández*, supra.

*Se revoca la sentencia.*

El Juez Asociado Señor Rigau no intervino. El Juez Asociado Señor Martín concurre en el resultado.

---

(⁷) Independientemente de lo expuesto, en el campo de las realidades, no albergamos duda que la confianza existe según lo evidencia la norma de que la firma de dos hermanos es suficiente para girar contra la cuenta bancaria. Ello supone que, en todo momento, cada uno de los hermanos tiene plena confianza en los otros dos.