Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| DAVID J. PÉREZ ARRITOLA<br><br>Apelante<br><br>v.<br><br>CARLOS L. GARCÍA MUÑIZ Y OTROS<br><br>Apelado | TA2026AP00095 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2020CV05757<br><br>Sobre: Daños |
|---|---|---|

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de febrero de 2026.

Comparece David J. Pérez Arritola (en adelante, señor Pérez Arritola o apelante) mediante un recurso de apelación para solicitarnos la revisión de la *Sentencia enmendada* emitida el 5 de diciembre de 2025, notificada el 8 de diciembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan.[1] Mediante la *Sentencia enmendada* apelada, el foro de instancia la (i) declaró *Con Lugar* la solicitud de desestimación interpuesta por la parte apelada, por lo que dictó sentencia desestimando la *Demanda Enmendada* interpuesta por el apelante, al amparo de la Regla 10.2 de las de Procedimiento Civil;[2] (ii) aceptó el desistimiento sin perjuicio presentado en escritos separados, una por el Matrimonio Ramos Hernández, en el SUMAC TPI, a la Entrada Núm. 637, y otra presentada por el Matrimonio García Solá y la Cuenta Individual de García Muñiz, en el SUMAC TPI, a la Entrada Núm. 635.

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), a la Entrada Núm. 638.
[2] 32 LPRA Ap. V, R. 10.2.

Por los fundamentos que expondremos, se *confirma* la *Sentencia enmendada* apelada.

I

La controversia de marras inició cuando, el 26 de octubre de 2020, el señor Pérez Arritola, por sí y en representación de la sociedad especial Plaza de Diego, S.E. (PDD),[3] presentó una *Demanda* sobre nulidad de sociedad civil, nulidad de compraventa y daños y perjuicios contra: (i) Carlos L. García Muñiz (señor García Muñiz), su esposa y la sociedad legal de bienes gananciales compuesta por ambos (Matrimonio García Solá); (ii) la cuenta individual de Carlos García Muñiz en el Fideicomiso Plan de Retiro de Horizontes Development S.E. (Cuenta Individual); (iii) Miguel A. Ramos Lozada (señor Ramos Lozada), su esposa y la sociedad legal de bienes gananciales compuesta por ambos (Matrimonio Ramos Hernández); (iv) PDD;[4] (v) MAC Development, Corp. (MAC); (vi) De Diego Village, LLC (DDV) (en conjunto, parte apelada); (vii) la Autoridad para el Financiamiento de la Vivienda de Puerto Rico (AFV), y (viii) otras partes codemandadas desconocidas.[5]

En el referido pliego, alegó que, allá para el 1993, convino con los señores García Muñiz, Ramos Lozada y Guillermo E. Llavona Cartagena (señor Llavona Cartagena), así como con las entidades Target Retirement Plan (Target) y MAC para constituir una sociedad especial nombrada Plaza de Diego, por un término de treinta y cinco (35) años. Según acotó el apelante, pasado un tiempo, el señor Llavona Cartagena cedió sus intereses, aumentando sus intereses en la sociedad, así como del señor Ramos Lozada. Indicó que, conforme dispone la Escritura número 11 sobre Constitución de

---

[3] Véase, SUMAC TPI, a la Entrada Núm. 1, pág. 12, párr. 92.

[4] Pese a que el señor Pérez Arritola presentó ciertas causas de acción en representación de PDD, a su vez, incluyó la sociedad especial como parte codemandada por ser sus actuales socios los siguientes codemandados: el señor García Muñiz, señor Ramos Lozada, MAC Development, Corp., y Target Retirement Plan.

[5] SUMAC TPI, a la Entrada Núm. 1.

Sociedad Civil Especial (Escritura Núm. 11), la referida sociedad se constituyó para los fines siguientes:

> manejar, operar, poseer y desarrollar, construir, rehabilitar, comprar, vender y/o arrendar rehabilitar, edificaciones, poseer y desarrollar, comprar, vender y/o casas, estructuras y terrenos; proyectos de construcciones generales en todas sus facetas; poseer, hipotecar o arrendar cualquiera de ellos con sus derechos y privilegios dentro de los límites permitidos por ley; y actividades agrícolas de cualquier naturaleza y la administración de éstas; y cualquier otra permitida por ley relacionada o incidental directa o indirectamente con estos objetivos y actividades.[6]

Explicó que, luego de constituida la sociedad, se adquirió la Finca Número 34979 (Propiedad), la cual era el resultado de una agrupación de tres (3) lotes independientes, no contiguos, localizados en el municipio de San Juan, en las calles Paseo de Diego número 61 y Nuestra Señora del Pilar números 59 y 65. Conforme manifestó el apelante, en esta propiedad, se comenzó a operar un centro comercial bajo el nombre de Plaza de Diego Mall. Manifestó que, tras mermar los visitantes que asistían al Centro Comercial, el señor García Muñiz, a los fines de comprar la propiedad de PDD y desarrollar en esta un complejo de residencias de alquiler bajo el programa de la *Low Income Housing Tax Credit* (Proyecto) incorporó la entidad DDV. Esto, según alegó, sin su participación y fuera de la sociedad especial antes reseñada. Planteó que, con el objetivo de lograr la venta de la propiedad, MAC, quien para entonces era el administrador de la aludida sociedad especial, suscribió unos cinco (5) contratos de opción, siendo el último firmado por el señor García Muñiz en representación de MAC y el señor Ramos Lozada en representación de DDV.

Dicho lo anterior, subrayó que, allá para el año 2020, recibió dos (2) correos electrónicos. En el *primero* se le citó a una reunión para discutir una deuda de PDD con el Centro de Recaudaciones Municipales (CRIM), la venta de la Propiedad y la liquidación de

---

[6] SUMAC TPI, a la Entrada Núm. 1, pág. 4, párr. 19, citando la Escritura Núm. 11.

PDD. Mientras que, en el *segundo*, recibió un documento en el que se incluyó el cómputo de la liquidación de la sociedad especial. Así, pues, conforme alegó el apelante, este hizo gestiones para comunicarse con el resto de los socios y oponerse, tanto a la venta de la propiedad como a la propuesta de liquidación de la sociedad. No obstante, lo anterior, luego de un tiempo, recibió un *tercer* correo electrónico con un documento intitulado *Deed of Purchase and Sale* en el cual se le informó que la propiedad en cuestión había sido vendida. Puntualizó que de la escritura de compraventa surgía de que la propiedad fue vendida a DDV. Esta fue firmada por el señor Ramos Lozada en representación de MAC y García Muñiz, en representación de DDV.

El apelante razonó que el señor García, Ramos, MAC y Target actuaron de mala fe y en violación a sus deberes de fiducia para con Plaza de Diego y sus socios, al crear una entidad paralela sin su participación y la intención de apropiarse para sí de lo que debía ser común. Asimismo, planteó que estos actuaron contrario a sus deberes de fiducia al, entre otras cosas, promover la disolución de la sociedad antes de que expirara su término y sin que existiera motivo alguno, de modo que esta disolución era *ultra vires* e ilegal y debía paralizarse de inmediato.

En mérito de lo anterior, el apelante peticionó que se decretara la nulidad de la compraventa en cuestión, así como se ordenara la devolución de las contraprestaciones. En la alternativa, solicitó que se le compensara por la pérdida que la venta causó a la sociedad especial, la cual estimó en no menos de $2,480,000.00 dólares. Por otra parte, solicitó que tanto los señores García Muñiz y Ramos Lozada, así como MAC y Target fueran excluidos como socios de PDD. Por último, peticionó que además de los remedios solicitaron se condenara a los demandados de forma solidaria a las costas y honorarios de abogado, con cualquier otro remedio que proceda.

Tras varias instancias procesales innecesarias de pormenorizar, el 16 de mayo de 2022, el apelante presentó una *Demanda enmendada* para incluir al Department of Housing and Urban Development (HUD) y a De Diego Village Holding, Inc. (DDVH), por ser ambas, a su juicio, partes indispensables.[7] Sobre esta última, indicó que era una corporación creada por los señores García Muñiz y Ramos Lozada para explotar la Propiedad en controversia, así como que era la acreedora hipotecaria de DDV.

En reacción, mediante escritos independientes, AFV,[8] DVH,[9] y DDV,[10] solicitaron que se desestimara la *Demanda enmendada* presentada en su contra bajo la Regla 10.2 de Procedimiento Civil,[11] en vista de que ninguno de los remedios solicitados iba dirigido a sus personas, ni tampoco se les imputó alguna conducta antijurídica.

En el interín, se archivó el caso por falta de jurisdicción, dado a que HUD presentó una acción de *removal* federal en el Tribunal Federal de Distrito de Puerto Rico.[12] No obstante, lo anterior, se devolvió el caso a la primera instancia judicial, luego de que el apelante desistiera de reclamación contra HUD.

Continuados los procedimientos, el 29 de junio de 2023, el foro de instancia, mediante *Sentencia Parcial*, desestimó con perjuicio la *Demanda enmendada* en cuanto a DDV, DDH, y la AFV.[13] Sobre este particular, el tribunal dispuso que las reclamaciones que el señor Pérez Arritola tuviese en contra de sus socios eran distintas y separadas al negocio de compraventa. Razonó que las entidades antes mencionadas estaban situadas en

---

[7] SUMAC TPI, a la Entrada Núm. 247.
[8] *Íd.*, a la Entrada Núm. 278.
[9] *Íd.*, a la Entrada Núm. 279.
[10] *Íd.*, a la Entrada Núm. 283.
[11] 32 LPRA Ap. V, R. 10.2.
[12] SUMAC TPI, a la Entrada Núm. 327. Véase, además, SUMAC TPI, a la Entrada 330.
[13] *Íd.*, a la Entrada Núm. 383.

la periferia de los problemas internos de la sociedad especial en controversia, así como que estaban ajenas a las disputas entre sus socios, y que nada en la *Demanda enmendada* expresaba lo contrario. En mérito de lo anterior, concluyó que la demanda subsistía entre los socios de PDD exclusivamente.

Inconforme con el curso decisorio, el apelante acudió ante este Tribunal de Apelaciones.[14] Mediante *Sentencia* del 30 de enero de 2025, el referido foro concluyó que el tribunal *a quo* actuó correctamente y que la única acción viable en este caso era contra los socios de la entidad vendedora.

Aun inconforme, el apelante acudió al Tribunal Supremo,[15] donde, mediante *Resolución* del 25 de abril de 2025, se declaró *no ha lugar* la petición de *certiorari*.

Luego de varios trámites procesales, los que incluyeron, pero no se limitaron, a la presentación de una reconvención por parte del Matrimonio Ramos Hernández,[16] y otra por el Matrimonio García Solá y la Cuenta Individual del señor García Muñiz,[17] el 4 agosto de 2025, PDD presentó una *Solicitud para que se tome conocimiento judicial de hechos adjudicativos y se desestime la demanda enmendada como acción derivativa.*[18] En esta alegó que, dado a que PDD no era una corporación, la relación que existía entre el señor Pérez Arritola y los aquí apelados era una contractual, que no se regía por la Ley de Corporaciones, si no por la Escritura Núm. 11. De modo que el apelante no tenía legitimación para presentar una acción en representación de la PDD. Por otra parte, acotó que, dado a que el tribunal en su *Sentencia Parcial* del 29 de junio de 2023, concluyó que la venta de la propiedad en cuestión era válida y

---

[14] SUMAC TPI, a la Entrada Núm. 554. Véase, además, *Sentencia* del alfanumérico KLAN202400885.

[15] *Íd.*, a la Entrada Núm. 555. Véase, además, *Resolución* del alfanumérico CC-2025-176.

[16] *Íd.*, a la Entrada Núm. 474.

[17] *Íd.*, a la Entrada Núm. 487.

[18] *Íd.*, a la Entrada Núm. 559.

beneficiosa para PDD, puesto a que se trataba de un negocio que estaba dejando pérdidas, solicitó al tribunal que, conforme a las Reglas 201 (C) y 202 (A) (1) de Evidencia de 2009, tomara conocimiento de los hechos que fueron determinados en la referida sentencia y dictara sentencia parcial desestimando la *Demanda Enmendada* en su totalidad.

En reacción, el 3 de septiembre de 2025, el señor Pérez Arritola presentó oposición a la desestimación solicitada por PDD.[19] Planteó que esta era una moción de reconsideración presentada fuera de término. Esto, en vista de que, a su juicio, PDD estaba solicitando que el tribunal revisara las determinaciones de una sentencia parcial dictada hacía más de dos (2) años. Así, pues, arguyó que, si la referida entidad entendía que la aludida sentencia tenía el efecto de desestimar la *Demanda enmendada* en su contra, debió haberlo solicitado al tribunal dentro del término de reconsideración. Por otro lado, acotó que, de considerarse dicha moción de desestimación en sus méritos, sus argumentos serían contrarios a derecho puesto a que la referida sentencia parcial no adjudicó hechos algunos.

Evaluado lo antedichos escritos, así como una réplica presentada por PDD,[20] el 24 de septiembre de 2025, el foro primario emitió una *Orden,* a través de la cual declaró *Sin Lugar* la solicitud de desestimación.[21] Concluyó que esta solicitud trataba de una petición tardía para enmendar una *Sentencia parcial* que ya era final y firme. Razonó que PDD solicitó que, a base de hechos adjudicativos en la aludida *Sentencia parcial,* el tribunal concediera remedios que no encontró a bien conceder cuando emitió este dictamen.

---

[19] SUMAC TPI, a la Entrada Núm. 576.
[20] *Íd.,* a la Entrada Núm. 577.
[21] *Íd.,* a la Entrada Núm. 593.

Inconforme, el 8 de octubre de 2025, PDD presentó una solicitud de reconsideración.[22] En la misma, acotó que nunca pretendió que se emendara la *Sentencia parcial* en cuestión. Menos aún que esta era favorable para las partes codemandadas. Planteó que lo único que pretendió fue solicitar un remedio como consecuencia de los hechos adjudicados en la referida Sentencia parcial. Específicamente solicitó que se reconsiderara la orden emitida, abriera la discusión y determinara los efectos del referido dictamen. Coetáneamente, el mismo día, la parte apelada presentó una *Moción de desestimación*.[23] En esta planteó que la *Demanda enmendada* se tramitó como una acción derivativa en vindicación de los derechos de la sociedad especial, de modo que cualquier indemnización en daños que procediera correspondía a la sociedad, y no a los socios. Establecido lo anterior, plantearon que la ley del caso establecía que PDD no experimentó daños como resultado de la venta impugnada, al contrario, el tribunal determinó que se benefició de la venta, pues se puso fin a más de una década de pérdidas. En consideración a lo anterior, arguyó que, luego de emitida la *Sentencia parcial* del 29 de junio de 2023, el reclamo derivativo dejó de existir. A tenor, solicitó la desestimación de la *Demanda enmendada* al amparo de la Regla 10.2 de Procedimiento Civil.[24]

En reacción a la solicitud de desestimación, y luego de que la parte apelada reiterara en dos (2) ocasiones que se dispusiera sobre este petitorio,[25] el 7 de noviembre de 2025, el apelante interpuso un escrito intitulado *Oposición a la tercera moción de desestimación*.[26] Alegó que, una vez más, lo que pretendía la moción de desestimación de la parte apelada era que el foro primario reconsiderara su

---

[22] SUMAC TPI, a la Entrada Núm. 597.
[23] *Íd.*, a la Entrada Núm. 598.
[24] 32 LPRA Ap. V, R. 10.2.
[25] SUMAC TPI, a las Entradas Núm. 616 y 618.
[26] *Íd.,* a la Entrada Núm. 624.

*Sentencia parcial* del 29 de junio de 2023. Manifestó que del propio dictamen se desprendía que el tribunal preservó la reclamación de daños entre socios y distinguió entre la validez de la venta y la posible responsabilidad por actos de deslealtad y despilfarro. Asimismo, arguyó que el referido dictamen de ninguna manera adjudicó que no existieran daños o que la venta hubiese sido válida o libre de responsabilidad. Así, pues, planteó que el señor Pérez Arritola presentó en su solicitud una versión distorsionada del referido dictamen, así como de la *Sentencia* del Tribunal de Apelaciones y de la *Demanda enmendada*, alterando su verdadero alcance y con el propósito de sostener conclusiones que de ellos no se deprende. Asimismo, sostuvo que siendo el dictamen uno dictado al amparo de la Regla 10.2 de Procedimiento Civil,[27] el tribunal, en ese momento, no contaba con el cause procesal para realizar determinaciones de hecho, ni para valorar prueba o inferir conclusiones fácticas distintas a las alegadas en la demanda. Por otro lado, alegó que lo determinante en la demanda no era el rótulo procesal ni la denominación del remedio, sino los hechos alegados y el derecho aplicable. De modo que no importaba el hecho de que se hubiese presentada demanda como una acción derivativa. A tenor, solicitó que se declarara sin lugar la moción de desestimación.

En respuesta, el 9 de noviembre de 2025, MAC presentó una *Réplica y reiteración de solicitud de desestimación.*[28] En esta, reiteró los argumentos presentados por la parte apelada en su petitorio desestimatorio, así como reaccionó a los planteamientos esgrimidos por el apelante. En lo pertinente, acotó que el daño alegado por el señor Pérez Arritola se basó en que se le excluyó de una oportunidad de negocio, sin embargo, resaltó que, mediante la Escritura Núm. 11, las partes pactaron libremente que cada uno podía hacer

---

[27] 32 LPRA Ap. V, R. 10.2.
[28] SUMAC TPI, a la Entrada Núm. 625.

negocios por su cuenta y de forma separada a PDD. De otra parte, arguyó que, aun tomando por cierto que hubo un conflicto de interés respecto a la compraventa de la Propiedad, no se podía pasar por alto que el voto mayoritario de los socios sanó y validó jurídicamente la transacción impugnada por el apelante.

En reacción, el 19 de noviembre de 2025, el apelante presentó una dúplica en la cual respondió a los planteamientos de MAC.[29] Particularmente, arguyó que la cláusula relativa a las operaciones por cuenta propia no autorizaba a que los socios se apropiaran de oportunidades de la sociedad para su propio beneficio. Por otra parte, alegó por primera vez que la parte apelada utilizó fondos de la sociedad para sufragar gastos propios de DDV, entidad quien compró la propiedad que pertenecía a PDD.

Pasados cinco (5) años desde que se presentó el caso del título y luego de un extenso descubrimiento de prueba, finalmente, el 26 de noviembre de 2025, el tribunal de instancia emitió y notificó *Sentencia.*[30] Notificado el referido dictamen, tanto el Matrimonio Ramos Hernández como el Matrimonio García Solá y otros, solicitaron, mediante escritos independientes, el desistimiento sin perjuicio de las reconvenciones incoadas.[31] Así, pues, el 5 de diciembre de 2025, notificada el día 8, del mismo mes y año, el foro *a quo* emitió una *Sentencia enmendada,* la cual constituye el dictamen objeto de este recurso.[32]

Mediante este dictamen, la primera instancia judicial dispuso sobre dos (2) asuntos los cuales podemos resumir de la siguiente forma: *Primero,* declaró *Con Lugar* la solicitud de desestimación interpuesta por la parte apelada, por lo que dictó sentencia desestimando la *Demanda enmendada* interpuesta por el apelante,

---

[29] SUMAC TPI, a la Entrada Núm. 631.
[30] *Íd.,* a la Entrada Núm. 634.
[31] *Íd.,* a las Entradas Núm. 635 y 637.
[32] *Íd.,* a la Entrada Núm. 638.

al amparo de la Regla 10.2 de las de Procedimiento Civil. *Segundo*, aceptó el desistimiento sin perjuicio presentado en escritos separados por: (i) el Matrimonio Ramos Hernández, según presentada en el SUMAC TPI, a la Entrada Núm. 637, y (ii) el Matrimonio García Solá y la Cuenta Individual de García Muñiz, según presentada en el SUMAC TPI, a la Entrada Núm. 635. Conviene mencionar que este dictamen atendió tanto la moción de desestimación presentada por la parte apelada, así como la reconsideración presentada por PDD.[33]

El tribunal de instancia razonó que las alegaciones respecto a los socios de PDD, esgrimidas en *Demanda enmendada,* se limitaban a que estos faltaron a su deber con la sociedad especial al usurparle una oportunidad de negocio para desarrollar cierto complejo mixto con noventa y cuatro (94) apartamentos de vivienda. De modo que lo que correspondía examinar era si la *Demanda enmendada* contenía hechos demostrativos que permitan inferir que el Proyecto era una oportunidad de negocios de PDD y si esa oportunidad fue usurpada. Sobre este particular, concluyó que de los hechos demostrativos se deprende que el Proyecto nunca fue presentado a PDD como una oportunidad de negocios, si no que, los señores García Muñiz y Ramos Lozada, siendo socios de PDD, idearon, tramitaron y ejecutaron el proyecto por su cuenta y en secreto. En consecuencia, el referido foro coligió que la *Demanda enmendada* no contenía alegaciones de hechos demostrativos que pudieran permitir inferir que el Proyecto era un negocio de PDD.

Asimismo, el Tribunal destacó en la aludida sentencia que la Escritura Núm. 11 era clara en que "[l]os Socios podrán hacer operaciones por cuenta propia. Las negociaciones hechas por los Socios en nombre propio y con sus fondos particulares, no se

---

[33] SUMAC TPI, a la Entrada Núm. 634, volante de notificación.

comunicarán a la Sociedad ni la constituirán en responsabilidad".[34] Sobre este particular, hizo hincapié que, aunque en su dúplica el señor Pérez Arritola acotó que los socios utilizaron fondos de la sociedad especial para sufragar gastos del Proyecto, no se pudo identificar una alegación a esos efetos en la *Demanda enmendada.* De otra parte, indicó que de los hechos demostrativos en la demanda se deprendía que el único vínculo entre el Proyecto y la sociedad especial era que el mismo se ubicaría en terrenos que pertenecieron a PDD. A tenor, el Tribunal concluyó que lo anterior no fue suficiente para inferir que el Proyecto era de PDD ni tampoco que hubo usurpación por parte de los socios.

Tras haber quedado inconforme con lo resuelto, el 23 de diciembre de 2025,[35] el apelante interpuso una *Moción de reconsideración*, la cual fue declarada *No Ha Lugar.*[36]

En desacuerdo aun, el 28 de enero de 2026, el apelante presentó un recurso de apelación en el cual esgrimió la comisión de los siguientes dos (2) errores:

Primer Error:

Erró el Tribunal de Primera Instancia al apartarse de la ley del caso y desestimar, sobre un fundamento no planteado por las partes, sin notificación previa ni oportunidad de ser oído o de enmendar, en violación al debido proceso de ley.

Segundo Error:

Erró el Tribunal de Primera Instancia al concluir que la Demanda Enmendada no alegó hechos suficientes para sostener una reclamación por usurpación de oportunidad de negocio y al ignorar reclamaciones autónomas por violación a los deberes fiduciarios entre socios, adecuadamente alegadas.

Mediante *Resolución* emitida el 29 de enero de 2026, concedimos a la parte apelada hasta el 27 de febrero de 2026, para presentar el alegato en oposición. El 25 de febrero de 2026, compareció la parte apelada mediante *Alegado en oposición a*

---

[34] SUMAC TPI, a la Entrada Núm. 638, citado el Anejo C.1 de la Entrada 487 del SUMAC, pág. 7.
[35] *Íd.*, a la Entrada Núm. 644.
[36] *Íd.,* a la Entrada Núm. 646.

*apelación.* Con el beneficio de la comparecencia de las partes, procederemos a disponer del recurso instado.

II

## A. La Regla 10.2 de Procedimiento Civil

La Regla 10.2 de Procedimiento Civil regula la presentación de defensas y objeciones a una reclamación judicial.[37] La moción de desestimación al amparo de esta regla es una defensa especial que formula el demandado para solicitar que se desestime la demanda presentada en su contra, incluso sin necesidad de formular una alegación previa.[38] En específico, la regla establece que:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
>
> (1) falta de jurisdicción sobre la materia;
>
> (2) falta de jurisdicción sobre la persona;
>
> (3) insuficiencia del emplazamiento;
>
> (4) insuficiencia del diligenciamiento del emplazamiento;
>
> (5) dejar de exponer una reclamación que justifique la concesión de un remedio;
>
> (6) dejar de acumular una parte indispensable.[39]

Al atender a una moción de desestimación fundamentada en que la reclamación no justifica la concesión de un remedio, el juzgador de instancia deberá tomar por cierto todos los hechos bien alegados en la demanda, así como aquellos que hayan sido aseverados de manera clara, concluyente y que de su faz no den margen a dudas.[40] A su vez, deberá interpretar las alegaciones de la demanda conjuntamente, de forma liberal y de la manera más favorable posible para la parte demandante, para así determinar si

---

[37] 32 LPRA Ap. V, R. 10.2.

[38] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008); *Colón v. Lotería,* 167 DPR 625, 649 (2006).

[39] Regla 10. 2 de Procedimiento Civil, *supra.*

[40] *González Méndez v. Acción Social et al,* 196 DPR 213, 234 (2016); *Accurate Sols. v. Heritage Enviroment,* 193 DPR 423, 433 (2015); *Colón v. Lotería,* 167 DPR 625, 649 (2006).

la misma es suficiente para constituir una reclamación válida.[41] Ello, puesto a que, en nuestro ordenamiento jurídico, se ha desarrollado una política pública a favor de que los casos se ventilen en los méritos.[42] A esos efectos, la desestimación únicamente procederá cuando existan circunstancias que permitan a los tribunales determinar, sin ambigüedades, que la demanda carece de todo mérito, o que la parte demandante no tiene derecho a obtener algún remedio.[43] Además, nuestro Tribunal Supremo ha sido enfático en que la desestimación no procede si la reclamación es susceptible de ser enmendada.[44]

### B. Las Alegaciones de la Demanda

Nuestro ordenamiento procesal no establece requisitos complicados o complejos para la redacción de una demanda.[45] La Regla 6.1(1) de Procedimiento Civil simplemente exige que las alegaciones expongan "una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio".[46] Asimismo, la Regla 6.5(a) de Procedimiento Civil insiste en que "[n]o se exigirán formulas técnicas para la redacción de las alegaciones o mociones".[47] En virtud de lo anterior, el demandante no está obligado a detallar todos los hechos que dan base a su reclamación.[48]

Es preciso aclarar que, dado a el propósito principal de las alegaciones es notificar a la parte contraria de las reclamaciones en su contra, el pliego debe al menos informarle sobre los actos que

---

[41] *Torres, Torres v. Torres et al.*, 179 DPR 481, 501 (2010); *Pressure Vessels PR v. Empire Gas PR*, 137 DPR 497, 505 (1994).
[42] *González Méndez v. Acción Social et al.,* supra, a la pág. 235.
[43] *Íd.*
[44] *Accurate Sols. v. Heritage Enviroment,* supra, a la pág. 433; *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 429 (2008); *Colón v. Lotería*, supra, a la pág. 649; *Clemente v. Depto. de la Vivienda*, 114 DPR 763, 771 (1993).
[45] *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 84 (2023); *León Torres v. Rivera Lebrón*, 204 DPR 20, 40 (2020).
[46] 32 LPRA Ap. V, R. 6.1.
[47] 32 LPRA Ap. V, R. 6.5.
[48] *Eagle Security v. Efrón Dorado et al*, supra, a las págs. 84-85.

causaron el presunto perjuicio.[49] Ello, para que la parte demandada pueda entender la sustancia de lo que debe defenderse. Igualmente, debe evitarse que la parte defensiva tenga que adivinar las causas a ser litigadas en su contra.[50]

### C. La Sociedad Especial

Según definida por el hoy derogado Código Civil de Puerto Rico de 1930 (Código Civil de 1930), una sociedad "es un contrato por el cual dos o más personas se obligan a poner en común dinero, bienes o industria con ánimo de partir entre sí las ganancias".[51] Esta entidad, "debe tener objeto lícito, y establecerse en interés común de los socios".[52] Aunque se puede constituir de cualquier forma, si se aportan para ella bienes muebles o derechos reales será necesaria la escritura pública.[53] Particularmente, se distingue por la *affectio societatis*, es decir, la cooperación de todos sus miembros para un mismo fin.[54] Siendo así, en una sociedad se propicia la unión de individuos con intereses diversos para fines de lucro.

Se conoce como sociedad especial aquella, en la cual sus miembros "gozan de responsabilidad limitada y, en el aspecto fiscal, no tributan como un ente separado, solamente tributan en su carácter individual".[55] En consecuencia, "los socios tributarán las ganancias y las pérdidas de la sociedad especial en su planilla personal, de acuerdo con su participación distribuible en el ingreso o en la pérdida de la sociedad".[56] Esto, distinto a una sociedad civil

---

[49] *León Torres v. Rivera Lebrón*, supra, a las págs. 40-41; *Tenorio v. Hospital Dr. Pila*, 159 DPR 777, 784 (2003).

[50] *León Torres v. Rivera Lebrón*, supra, a la pág. 41; Véase, además, J.A. Echevarría Vargas, Procedimiento Civil Puertorriqueño, 1ra ed. rev., San Juan, [Ed. del autor], 2012, a la pág. 80.

[51] Artículo 1556 del Código Civil de 1930, 31 LPRA sec. 4311 (derogado). El referido código fue derogado por el Código Civil de Puerto Rico de 2020, aprobado mediante la Ley Núm. 55-2020. Para fines de la presente, se hace referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable a la controversia que nos ocupa.

[52] *Íd.*, Artículo 1557, 31 LPRA sec. 4312.

[53] *Íd.*, Artículo 1558, 31 LPRA sec. 4313.

[54] *Quiñones Reyes v. Registrador*, 175 DPR 86, 874 (2009).

[55] *Íd.*, a la pág. 875.

[56] *Íd.*

ordinaria en la cual sus miembros responden con su patrimonio personal, subsidiaria y mancomunadamente, de las obligaciones de la sociedad, en el caso de que el patrimonio de la entidad sea insuficiente para sufragarlas.[57]

Precisa destacar que, aunque en el aspecto contributivo la sociedad especial está reglamentada por el Código de Rentas Internas, en realidad, esta se rige en primera instancia por lo pactado entre los socios.[58] Así, pues, la sociedad especial únicamente se rige por el ordenamiento civil de manera supletoria.[59] Sobre este particular, se ha dicho que "la sociedad es el producto de la convención, por lo que, para existir, requiere la existencia de un contrato".[60] Respecto al contrato de sociedad, huelga acentuar que este se distingue por ser: (i) preparatorio, porque crea una entidad destinada a celebrar otros contratos; (ii) consensual, porque se perfecciona por el mero consentimiento; (iii) bilateral o plurilateral, porque da nacimiento a derechos y obligaciones recíprocas; (iv) oneroso, porque entre las prestaciones de los socios y las ganancias que esperan hay equivalencia, y (v) de confianza, por contraerse en atención a las cualidades personales de los socios.[61]

Por último, es menester subrayar que se ha entendido que, una vez la sociedad detiene sus actividades sociales, comienza su extinción.[62] Esto es, que se produce la liquidación de la sociedad.[63]

### III

En el presente recurso, el apelante, mediante sus dos (2) señalamientos de error, arguye que el tribunal de instancia incidió al apartarse de la ley del caso y al desestimar la controversia del título basado en un fundamento no planteado por las partes, sin

---

[57] *Quiñones Reyes v. Registrador*, supra, a la pág. 874.
[58] *Íd.*, a la pág. 876.
[59] *Marcial v. Tome*, 144 DPR 522, 545-546 (1997).
[60] *Daubón Belaval v. Srio. de Hacienda*, 106 DPR 400, 412 (1977).
[61] *Marcial v. Tome*, supra, a la pág. 546.
[62] *Íd.*, a la pág. 547.
[63] *Íd.*

concederle oportunidad de ser oído o enmendar la demanda, lo cual constituyó una violación al debido proceso de la ley. De otra parte, plantea que el referido foro erró al razonar que la demanda enmendada no alegó hechos suficientes para sostener una reclamación por usurpación de oportunidad de negocios y al ignorar reclamaciones autónomas por violación a los deberes fiduciarios de los socios. Por estar íntimamente relacionados, atenderemos los dos (2) errores esgrimidos por el apelante de manera conjunta.

Según relatamos previamente, la controversia de marras inició cuando el aquí apelante incoó una demanda en contra de la parte apelada del título. Esencialmente, planteó que, en el año 1993, convino con señores García Muñiz y Ramos Lozada, así como con las entidades Target, MAC, y otros, para constituir una sociedad especial nombrada Plaza de Diego (PDD). Acotó que, luego de un tiempo, esta sociedad adquirió la Finca Número 34979, en la cual se comenzó a operar un centro comercial bajo el nombre de Plaza de Diego Mall. Dicho lo anterior, expuso que, allá para el año 2020, el resto de los socios de PDD convinieron en secreto para comprar el inmueble que pertenecía a la sociedad y desarrollar en esta un complejo de residencias de alquiler a bajo costo. A tenor, entre otras cosas, alegó que, lo anterior, constituyó una violación por parte de los socios a sus deberes de fiducia, ya que crearon una entidad paralela sin su participación y se apropiaron de lo que debía ser común.

Posteriormente, el apelante enmendó la demanda para incluir al HUD y a DDVH, por ser ambas partes indispensables. Sin embargo, luego de varios trámites procesales los cuales incluyeron, pero no se limitaron, a tres (3) solicitudes de desestimación presentadas por HUD, DDH, y DDV, el foro primario emitió una *Sentencia parcial* mediante la cual desestimó la demanda respecto a estas tres (3) entidades, así como que dispuso que la demanda

subsistía entre los socios de PDD exclusivamente. Este dictamen fue confirmado por este Tribunal de Apelaciones mediante *Sentencia.*

Tras un sinnúmero de trámites procesales y un amplio descubrimiento de prueba, la parte apelada del título presentó una solicitud de desestimación en la cual acotó que las alegaciones de la *Demanda enmendada* no justificaban la concesión de un remedio a favor del apelante. En reacción, el apelante presentó oposición y, luego, se presentaron escritos para replicar y duplicar.

Examinados todos los escritos, el tribunal emitió una *Sentencia* final, mediante la cual desestimó la *Demanda enmendada* en su totalidad. Posteriormente, este dictamen fue enmendado para, a su vez, declarar con lugar dos (2) solicitudes de desistimiento sin perjuicio presentadas por los Matrimonios Ramos Hernández y García Solá, a los fines de renunciar a las reconvenciones incoadas por estos. A través de este dictamen, el tribunal, fundamentalmente, concluyó que la *Demanda enmendada* no contenía alegaciones de hechos demostrativos que pudieran permitir inferir que el Proyecto era una oportunidad de negocios de PDD y que esa oportunidad fue usurpada. Así, pues, razonó que dado a que las alegaciones respecto a los socios se limitaron a lo anterior, no se justificaba un remedio a favor del apelante.

Inconforme, y luego de denegada una solicitud de reconsideración, el apelante acudió antes esta Curia mediante un recurso apelativo en el cual esgrimió la comisión de los errores antes reseñados.

Es norma harta conocida que la moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil es una defensa especial que se puede presentar cuando la demanda deja de exponer

una reclamación que justifique la concesión de un remedio.[64] Presentada esta moción, el juzgador debe tomar por cierto todos los hechos bien alegados en la demanda, así como los que han sido planteados de manera clara y que no den margen a dudas.[65] Igualmente, este deberá interpretar las alegaciones de la demanda de manera conjunta y de la forma más liberal posible para la parte demandante.[66]

Es importante reseñar que la desestimación de la demanda solo debe proceder cuando, sin ambigüedad, el Tribunal determine que la demanda carece de todo mérito y que el demandante no tiene derecho a ningún remedio.[67] Por otra parte, se ha entendido que la desestimación no procede si la reclamación es susceptible de ser enmendada.[68] Respecto a las enmiendas a la demanda, la Regla 13.1 es clara en que, una vez se notifican las alegaciones responsivas, las partes únicamente podrán enmendar su pliego con el permiso del tribunal o mediante el consentimiento por escrito de la parte contraria, cosa que en este caso no ocurrió.[69]

En cuanto a las alegaciones de la demanda, la Regla 6.1 (1) de Procedimiento Civil solo exige que estas expongan "una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio".[70] Es decir, el demandante no está obligado a detallar todos los hechos que dan base a su reclamación.[71] Ahora bien, es importante que, de las alegaciones, la parte demandante pueda entender la sustancia de lo que debe

---

[64] 32 LPRA Ap. V, R. 10.2.

[65] *González Méndez v. Acción Social et al*, supra, a la pág. 234; *Accurate Sols. v. Heritage Enviroment,* supra, a la pág. 433; *Colón v. Lotería*, supra, a la pág. 649.

[66] *Torres, Torres v. Torres et al.*, supra, a la pág. 501; *Pressure Vessels PR v. Empire Gas PR*, supra, a la pág. 505.

[67] *González Méndez v. Acción Social et al.,* supra, a la pág. 235.

[68] *Accurate Sols. v. Heritage Enviroment,* supra, a la pág. 433; *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 429 (2008); *Colón v. Lotería*, supra, a la pág. 649; *Clemente v. Depto. de la Vivienda*, supra, a la pág. 771.

[69] Regla 13.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 13.1.

[70] 32 LPRA Ap. V, R. 6.1.

[71] *Eagle Security v. Efrón Dorado et al*, supra, a las págs. 84-85.

defenderse, así como que se debe evitar que la parte defensiva tenga que adivinar las causas a ser litigadas en su contra.[72]

Con todo lo anterior en mente, y tras revisar los autos ante nuestra consideración, con especial atención a alegaciones esgrimidas en la *Demanda enmendada*, la cual data del año 2022, aun interpretando las alegaciones de la forma más liberal y favorable para el demandante nos es forzoso coincidir con el razonamiento del tribunal de instancia, respecto a que la *Demanda enmendada* no justifica un remedio a favor del aquí apelante. Nos explicamos.

Al evaluar detenidamente las alegaciones de la demanda, nos percatamos que, tal como dispuso la primera instancia judicial, todos los remedios solicitados en la *Demanda enmendada*, incluyendo los daños a favor del apelante y de PDD, se circunscriben a la alegación de que el Proyecto era una oportunidad de negocios de PDD y que esa oportunidad fue usurpada.

Establecido lo anterior, acentuamos de entrada que, de ninguna manera, se desprende de las alegaciones de la demanda que el proyecto de residencias para alquiler a bajo costo, fue una oportunidad de negocios para PDD antes de que los socios en controversia convinieron para comprar la Propiedad de la sociedad y desarrollar en ella el referido Proyecto. Solo se plantea por parte del apelante, como cuestión especulativa, que el Proyecto **pudo haber sido** una oportunidad de negocios para PDD. Tampoco, se desprende que los socios estaban impedidos de hacer negocios por su cuenta, como tampoco que el socio administrador estuviera impedido de vender la propiedad inmueble de la sociedad. Al contrario, la Cláusula Séptima de la Escritura Núm. 11 es clara en que el socio administrador estaba autorizado a:

> hacer en nombre de la Sociedad toda clase de gestiones y/o operaciones de negocio y transacciones comerciales; y además, se le **faculta para operar, manejar, desarrollar los**

---

[72] *León Torres v. Rivera Lebrón,* supra, a la pág. 41.

> **negocios, comprar, vender, transferir, arrendar, gravar, hipotecar, permutar, pignorar, adjudicar en pago o recibir en pago de deuda toda clase de bienes muebles e inmuebles cualquier interés en los mismos**; realizar toda clase de operaciones bancarias y/o financieras, obtener toda clase de cuentas, obtener todo tipo de préstamos a crédito para el beneficio de y a nombre de la Sociedad bajo los acuerdos y condiciones que estime apropiados y garantizar los mismos con propiedad mueble y/o inmueble de la Sociedad y a otorgar toda clase de documentos que fueran menester en el desarrollo de los negocios y de las operaciones bancarias y/o financieras que realice la Sociedad.[73]

Por otra parte, esa misma cláusula en su inciso dos (2) les confiere a los socios facultad para hacer operaciones ***por cuenta propia***. Sobre esta facultad, se enfatiza en la Escritura que "[l]as negociaciones hechas por los Socios en nombre propio y con sus fondos particulares, ***no se comunicarán a la Sociedad ni la constituirán en responsabilidad alguna***".[74]

Según reseñamos en nuestra exposición doctrinal previa, nuestro ordenamiento jurídico ha sido enfático en que la sociedad especial, para existir, requiere la existencia de un contrato.[75] A tenor, la sociedad se regirá en primera instancia por lo pactado entre los socios y, de manera supletoria, por el ordenamiento civil.[76]

Sabido es, que en cuanto al contrato se refiere, desde el momento en que las partes perfeccionan con el mero consentimiento un contrato, cada una viene obligada no solo a cumplir con lo expresamente pactado, sino también con las consecuencias que, según su naturaleza, sean conformes a la buena fe, al uso y a la ley.[77] Por consiguiente, la validez y el cumplimiento de los contratos no puede dejarse al arbitrio de una de las partes.[78] Como corolario de lo antes expuesto, el Código Civil de 1930, dispone en su Artículo 1233 que "[s]i los términos de un contrato son claros y no dejan

---

[73] SUMAC TPI, a la Entrada Núm. 487, Anejo C.1, pág. 4. (Énfasis nuestro).
[74] *Íd.,* pág. 7. (Énfasis nuestro).
[75] *Daubón Belaval v. Srio. de Hacienda*, 106 DPR 400, 412 (1977).
[76] *Quiñones Reyes v. Registrador*, supra, a la pág. 876.
[77] Artículo 1210 del Código Civil de 1930, supra, 31 LPRA sec. 3375 (derogado); *Unysis v. Ramallo Brothers*, 128 DPR 842, 852 (1991).
[78] Artículo 1208 del Código Civil de 1930, *supra*, 31 LPRA sec. 3373 (derogado); *Unysis v. Ramallo Brothers*, supra, a la pág. 852.

duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas".[79] Así, pues, los tribunales se deben limitar a interpretar los contratos en los casos en los que esto sea estrictamente necesario.[80]

Por último, es menester subrayar que mediante una acción *ex contractu,* se podrá solicitar el resarcimiento de los daños que emanen del quebrantamiento de los deberes convenidos.[81] Ahora bien, para que proceda esta acción, debe existir un pacto el cual haya generado tanto una obligación, así como una expectativa en virtud de la cual actuaron las partes.[82] Además, será necesario que la parte afectada demuestre la existencia de un nexo causal entre el incumplimiento contractual y el daño reclamado.[83]

De la Escritura Núm. 11 se desprende con claridad que el socio administrador estaba autorizado a vender todo tipo de bienes a nombre de la sociedad, así como que los socios estaban autorizados a hacer operaciones por cuenta propia, las cuales no tenía que comunicar a la sociedad y por las cuales no responderían por daños. Siendo así, los socios demandados no infringieron ningún deber generado a través de Escritura Núm. 11, por el cual tuviesen que responder por los daños infringidos, al comprar lo que era propiedad de PDD para desarrollar un negocio para su propio beneficio. Incluso, se deprende de las propias alegaciones de la *Demanda enmendada* que la Propiedad estaba generando pérdidas, de modo que no era beneficiosa para sociedad.

Por otro lado, cabe reseñar que se ha entendido que una sociedad únicamente puede existir cuando hay entre los socios *affectio societatis*, es decir, la cooperación de todos sus miembros

---

[79] Artículo 1233 del Código Civil de 1930, supra, 31 LPRA sec. 3471 (derogado).
[80] *Macial Burgos v. Tomé*, 144 DPR 522, 537 (1997).
[81] *Soc. de Gananciales v. Vélez & Asoc*, 145 DPR 508, 521 (1998).
[82] *Álvarez v. Rivera*, 165 DPR 1, 18 (2005).
[83] *Cruz Cruz v. Casa Bella Corp.,* 213 DPR 980, 999 (2024).

para un mismo fin.[84] Cuando lo anterior deja de existir, comienza la extinción de la sociedad.[85] Ciertamente, del negocio realizado por parte de los socios se denota que estos ya no albergaban un mismo propósito, de manera que no hacía sentido seguir unidos en sociedad.

En fin, no podemos coincidir con el pedimento del señor Pérez Arritola y mucho menos, permitir en esta etapa de los procedimientos, una enmienda adicional a la demanda. Más aún cuando el litigio había comenzado hacía unos cinco (5) años y se había realizado un extenso descubrimiento de prueba. Aunque es cierto que una demanda no debe ser desestimada si es susceptible de ser enmendada, precisa reiterar que, en la avanzada etapa en la cual se encontraba el caso de marras, el apelante tenía que solicitar autorización al tribunal para enmendar su demanda o contar con el permiso por escrito de la parte apelada, cosa que, según adelantamos, no ocurrió. No fue hasta que el apelante solicitó la reconsideración de la *Sentencia enmendada* que planteó por primera vez que el tribunal incidió al desestimar la demanda, sin antes concederle oportunidad de enmendar sus alegaciones. A nuestro juicio, el apelante, durante varios años tuvo amplia oportunidad para solicitar enmendar sus alegaciones y no lo hizo. Así, pues, colegimos, que el tribunal no incidió al desestimar la demanda sin antes concederle oportunidad para enmendar.

En consecuencia, de todo lo antes expuesto, coincidimos en que ninguno de los errores esgrimidos se cometió, por lo que procede confirmar el dictamen apelado.

IV

Por los fundamentos que anteceden, se *confirma* la *Sentencia enmendada* apelada.

---

[84] *Quiñones Reyes v. Registrador,* supra, a la pág. 874.
[85] *Íd.,* a la pág. 875.

Lo acordó el Tribunal y manda, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones